IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALEX MADRID, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:22-CV-0982-D |
| VS. | § | |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this action by *pro se* plaintiff Alex Madrid ("Madrid") for medical malpractice under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), Madrid alleges that he received substandard care at the Dallas Veterans Affairs Medical Center and Fort Worth Outpatient Clinic (collectively, "VAMC"). Madrid moves for partial summary judgment, and defendant United States of America (the "government") cross-moves for summary judgment. The government also moves to strike Madrid's expert designations and reports, to exclude the testimony of Rahul Jain, M.D. ("Dr. Jain"), and to limit the testimony of Dianne L. Zwicke, M.D. ("Dr. Zwicke"). For the reasons that follow, the court denies Madrid's motion for partial summary judgment; grants in part and denies in part the government's cross-motion for summary judgment; grants in part and denies in part the government's motion to strike; grants the government's motion to exclude as to Dr. Jain; grants in part and denies in part the government's motion to limit the testimony of Dr. Zwicke; and caps Madrid's recoverable damages at $778,000, of which no more than

$250,000 may be awarded for noneconomic damages.

I

According to Madrid,[1] in October 2015, following a stroke, Madrid was diagnosed with atrial flutter.  To treat this condition, Madrid underwent a radiofrequency ablation procedure ("RFA").[2]  Nearly one year later, after Madrid complained to the VAMC about shortness of breath, testing confirmed that Madrid had atrial fibrillation ("A-Fib").[3] According to the government, Madrid's attending physician, Phi Wiegn, M.D. ("Dr. Wiegn"), the electrophysiology fellow, Curtiss Moore, M.D. ("Dr. Moore"), or both, would have orally explained to Madrid the various treatment options for A-Fib (i.e., medication or a second RFA), as well as the known risks of ablation, including pulmonary vein stenosis ("PVS")[4] in up to 3-4% of cases.  After allegedly obtaining Madrid's informed consent—a

---

[1]When both sides move for summary judgment, the court recounts the evidence that is undisputed, and, when it is necessary to set out evidence that is contested, does so favorably to the side who is the summary judgment nonmovant in the context of that evidence.  *See, e. g.*, *GoForIt Ent., LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 718 n.4 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) (Fitzwater, J.)).

[2]According to the government, "'[c]ardiac ablation uses heat or cold energy to create tiny scars in the heart to block irregular electrical signals and restore a typical heartbeat.  The procedure is used to correct heart rhythm problems (arrhythmias)' and 'is most often done using thin, flexible tubes called catheters inserted through the veins or arteries.'"  D. Br. (ECF No. 56) at 5 n.5 (citation omitted).

[3]A-Fib is an irregular and often very rapid heart rhythm (arrhythmia) that can lead to blood clots in the heart.  A-Fib increases the risk of stroke, heart failure, and other heart-related complications.

[4]PVS is a condition in which the pulmonary veins are narrowed.  According to the government, PVS is an increasingly rare, but not uncommon, complication of an ablation

fact that Madrid disputes—Dr. Wiegn performed a second RFA on February 28, 2017.

On July 6, 2017, four months after Madrid's second RFA, Madrid again complained to the VAMC of shortness of breath. Radiology imaging performed on July 7, 2017 showed PVS and possible stasis/pulmonary vein thrombosis that was deemed "critical to patient care." SAC App. Ex. 55 at 1 (capitalization omitted). Madrid was admitted to the VAMC Emergency Room ("VAMC ER") on July 10, 2017, and a procedure to stent three pulmonary veins was scheduled for July 12, 2017. On July 11, however, Madrid self-discharged from VAMC against medical advice.[5] That same day, a VAMC ER nurse contacted Madrid and allegedly informed him that he had a discharge diagnosis of pulmonary hypertension.[6]

On August 10, 2017 VAMC physician Houman Khalili, M.D. ("Dr. Khalili") performed a stent procedure in which he placed stents in Madrid's bilateral inferior pulmonary veins. On December 22, 2017 Dr. Khalili placed a stent in Madrid's left superior pulmonary vein ("LSPV"). In the months and years that followed, Madrid underwent numerous procedures, including a balloon angioplasty in April 2019 and an angiography and "stent in stent" replacement in June 2020, in an attempt to treat his PVS. Although it appears that treatment of the PVS in Madrid's left-lower and right-lower pulmonary veins was

---

procedure and typically presents three to six months after the procedure.

[5]Madrid maintains that this was the result of child-care issues that he encountered as a single father.

[6]Madrid disputes that he was informed "of [pulmonary hypertension] in any fashion, in which there is no formal diagnosis with ICD code, treatment plan, or follow-up care." SAC ¶ 37.

somewhat successful, his LSPV did not respond to treatment, and he developed complete obstruction and loss of function.  In January 2021, after testing at the University of Texas Southwestern Medical Center ("UTSW") verified that Madrid had pulmonary hypertension and fibrosis due to chronic total occlusion of the LSPV, Madrid's care team decided that Madrid would be best served in the long term by having a left upper partial lobectomy, which was performed on April 7, 2021.

On May 7, 2021 Madrid filed with the United States Department of Veterans Affairs ("VA") an administrative claim for personal injury, using Standard Form 95 ("SF-95"). After twice amending his SF-95 to increase the amount of his claim, Madrid filed the instant lawsuit on May 3, 2022.  In his second amended complaint ("SAC"), which is the operative pleading, Madrid alleges claims under the FTCA for: delay in care of A-Fib (count 1); substandard care of A-Fib (count 2); delay in care of PVS (count 3); substandard care of PVS (count 4); failure to diagnose, treat, and inform pulmonary hypertension (count 5); and failure to diagnose, inform, and treat pulmonary fibrosis (count 6).[7]

Madrid moves for partial summary judgment on counts 5 and 6 of the SAC.  The government opposes Madrid's motion and cross-moves for summary judgment on all of Madrid's claims.  The government also moves to strike Madrid's expert designations and reports, to exclude the testimony of Dr. Jain, and to limit the testimony of Dr. Zwicke.

---

[7]The SAC also contains a claim for substandard medical records (count 7), but Madrid acknowledged at oral argument that this is not a standalone claim.  The court therefore grants summary judgment dismissing this claim.  *See infra* note 21.

Briefing on these motions is complete, and the court has heard oral argument.[8]

## II

When a summary judgment movant will not have the burden of proof on a claim at trial, it can obtain summary judgment by pointing to the absence of evidence on any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, the nonmovant must go beyond his pleadings and designate specific facts to demonstrate that there is a genuine issue of material fact for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

When the summary judgment movant will have the burden of proof on a claim or defense, however, the movant "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878

---

[8]A few days before oral argument, Madrid filed a partially opposed motion to add evidence to the November 8, 2023 oral arguments on the pending summary judgment and expert motions. Because the court's consideration of Madrid's requested evidence does not change the court's rulings on the motions at issue, the court denies Madrid's motion to add evidence without prejudice as moot.

F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  This means that the movant must demonstrate that there are no genuine and material fact disputes and that the movant is entitled to judgment as a matter of law.  *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'"  *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

In its cross-motion, the government maintains that the FTCA's two-year limitations period bars all of Madrid's claims other than for medical negligence that occurred between May 2019 and January 2020.  This ground of the government's motion, if granted, would result in dismissal of counts 1 and 2 of the SAC.

A

The FTCA bars a plaintiff from bringing a tort action against the federal government unless his claim is first presented to the appropriate federal agency "within two years after such claim accrues."  *United States v. Kubrick*, 444 U.S. 111, 113 (1979) (citing 28 U.S.C. § 2401(b)).  A cause of action generally accrues under § 2401(b) "when the plaintiff knows or has reason to know of the injury which is the basis of the action."  *Ramming v. United States*, 281 F.3d 158, 162 (5th Cir. 2001) (citation omitted).  But in a medical malpractice case, "where the injury or its cause may not be manifested to the plaintiff until many years

after the event, the tort action does not 'accrue' for statute of limitations purposes, until the plaintiff is put on notice of the wrong." *MacMillan v. United States*, 46 F.3d 377, 381 (5th Cir. 1995) (citation omitted). This occurs when the plaintiff has "knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection between the treatment and injury or (b) to seek professional advice, and then with that advice, to conclude that there was a causal connection between the treatment and injury." *Id*. (citation omitted).

B

The government moves for summary judgment on the ground that Madrid's informed consent and negligent procedure claims arising from the February 2017 RFA accrued no later than July 10, 2017 and are therefore time-barred. It maintains that Madrid learned soon after a July 7, 2017 CT scan that he was suffering from PVS as a complication of his RFA; that, by no later than July 10, 2017, Madrid knew about both the injury (PVS) and the cause (that the PVS was a complication from the RFA); that the results of the July 7, 2017 CT scan, followed by the VAMC's haste in insisting that Madrid remain in the hospital for surgery the following day, were sufficient to lead a reasonable person to seek advice in the medical and legal community within the next two years; that because Madrid did not file his administrative tort claim until nearly four years later, his informed consent and medical malpractice claims related to the February 2017 RFA are time-barred; and that no extraordinary circumstances blocked Madrid from timely filing his tort claim.

Madrid responds that the two-year statute of limitations should be tolled because

government actors fraudulently concealed that an excess amount of energy, which is known to cause PVS, was applied during the 2017 RFA.  He contends that the EP Cardiac Procedure Note made available to him shows an inaccurate number of applications performed, watts used, and duration of time used per application of energy during the 2017 RFA; the correct "time per ablation application" information was contained in a 2017 VA Cath Lab Procedure Report ("Cath Report"); he "had no time and was in no health to investigate his course of treatment as he was constantly in a course of treatment for 50 months," from February 28, 2017 until April 7, 2021, P. Br. (ECF No. 68-1) at 28; he requested "all" medical records from VAMC numerous times after filing his Form SF-95 in May 2021, but the Cath Report was not included; the facts disclosing medical malpractice were "not discovered until records were produced after 5/10/21, which showed the '*true*' number of applications, watts used per application and duration of each application, which was concealed and documented differently in plaintiff's electronic medical records," *id.* at 8; under Tex. Civ. Prac. & Rem. Code Ann. § 74.251(West 2017), the statute of limitations begins to run when the treatment "is completed," and, in this case, there was a continuous course of treatment and pattern of substandard care beginning with the negligent RFA in 2017 and ending with the lobectomy of Madrid's left upper lobe of his left lung; and the "true data 'more likely than not' was concealed to hide that an excess duration of time . . . was used per ablation application, which is known to cause PVS by thermal injury," *id.* at 29-30.

The government responds that Madrid possessed the Cath Report at least as early as September 26, 2021, "well before he filed this lawsuit," D. Reply (ECF No. 73) at 4; Madrid

has provided no evidence of due diligence, and neither of the circumstances he identifies—incomplete medical records and a 50-month period of receiving medical treatment—falls within the narrow categories that the Fifth Circuit has identified as "extraordinary circumstances"; there is no evidence of affirmative misconduct on the part of the government or that the government misled or "tricked" Madrid into allowing the filing deadline to pass; and Madrid has failed to cite any authority suggesting that the FTCA's statute of limitations is tolled during periods of alleged physical disability or to show how any of his physical limitations prevented him from filing an administrative claim.

C

Madrid does not appear to dispute that his claims based on the 2017 RFA (counts 1 and 2) accrued for limitations purposes by July 10, 2017.[9]  He maintains instead that the statute of limitations should be equitably tolled under the continuous treatment doctrine and because the government fraudulently concealed information about the 2017 RFA that would suggest medical malpractice.

1

The FTCA's two-year limitations period is subject to equitable tolling in "rare circumstances." *Roe v. United States*, 839 Fed. Appx. 836, 843 (5th Cir. 2020) (per curiam) (citing *Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 489 (5th Cir. 2016)).  This doctrine "preserves a plaintiff's claims when strict application of the statute of limitations

---

[9]Madrid conceded at oral argument that he knew in 2017 that there had been an adverse consequence of the RFA.

- 9 -

would be inequitable." *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000) (citation omitted).  It "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996) (citation omitted).  The Fifth Circuit "has recognized several grounds for equitable tolling, including where a plaintiff is unaware 'of the facts giving rise to the claim because of the defendant's intentional concealment of them.'" *Trinity Marine Prods., Inc.*, 812 F.3d at 489 (quoting *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011)).  "When a plaintiff seeks equitable tolling due to the defendant's intentional concealment of material facts, he or she must show both (1) concealment by the defendant, and (2) that the plaintiff failed, despite the exercise of due diligence, to discover the relevant facts that form the basis of his claim." *Roe*, 839 Fed. Appx. at 843 (citing *Trinity Marine Prods., Inc.*, 812 F.3d at 489).

The court as trier of fact could not reasonably find from the summary judgment evidence that the government intentionally concealed material facts from Madrid or that, despite the exercise of due diligence, Madrid failed to discover the relevant facts that form the basis of his claim once he became aware that the 2017 RFA had caused PVS.[10]  In his response, Madrid contends that information regarding the "overdose of energy" during the 2017 RFA "was kept from [him]" and that the "true data 'more likely than not' was

---

[10]Although the government bears the burden of proof with respect to its statute of limitations affirmative defense, *see Trinity Marine Prods., Inc.*, 812 F.3d at 486, the party who invokes equitable tolling, i.e., Madrid, bears the burden of proof on this issue, *see Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002).

concealed to hide that an excess duration of time . . . was used per ablation application."  P. Br. (ECF No. 68-1) at 29-30.  But he adduces no evidence in support of these conclusory assertions.  He contends that information in the EP Cardiac Procedure Note was inaccurate and that the Cath Report (which contains the "true data") was not included in his medical records, but he fails to produce any evidence that the government was aware of any inaccuracies in the EP Cardiac Procedure Note or that it knew that Madrid had not been provided the "true data."  Nor has he adduced any evidence that the government intentionally concealed information from him.  *See, e.g.*, *Granger*, 636 F.3d at 712 (describing "plaintiff's unawareness of the facts giving rise to the claim because of the defendant's *intentional* concealment of them" (emphasis added) as a basis for equitable tolling); *see also, e.g.*, *Dupree v. United States*, 495 Fed. Appx. 422, 425 (5th Cir. 2012) (per curiam) (holding that "equitable tolling cannot be used to extend the FTCA two-year limitations period" where, *inter alia*, "the defendant did not intentionally conceal facts that would support [plaintiff]'s claim."); *Hale v. United States*, 2017 WL 4512561, at *7 (S.D. Tex. Aug. 18, 2017) (holding that certain of plaintiff's FTCA claims were time-barred and that equitable tolling did not apply where, *inter alia*, "[p]laintiff ha[d] presented no competent evidence of 'intentional concealment' of the facts by Defendants.").  Speculation that it is "more likely than not" that the government concealed the "true data" to hide facts suggesting medical malpractice is alone insufficient to defeat the government's limitations defense.  *See, e.g.*, *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) ("'[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for

- 11 -

summary judgment." (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc))).

Nor has Madrid produced sufficient evidence for the court as trier of fact to reasonably find that he acted with diligence. Madrid contends that he requested his medical records "on numerous occasions after filing his original SF-95 on May 10, 2021." P. Br. (ECF 68-1) at 7. But these records requests occurred nearly *four years* after Madrid was informed that he had developed PVS as a result of the 2017 RFA. Madrid's explanation for the delay is that he was in poor health:

> Mr. Madrid underwent 6 more heart surgeries and a lobectomy to remove his [left upper lobe] of his left lung after the 2017 ablation. Besides the surgeries, this encompassed countless office visits, testing, significant health issues pre procedures and recovery time post procedures. Mr. Madrid had no time and was in no health to investigate his course of treatment as he was constantly in a course of treatment for 50 months.

*Id.* at 28. He also maintains that he was "legally disabled" with, *inter alia*, A-Fib, pulmonary hypertension, PVS, and pulmonary fibrosis, and he contends that he "reasonably requested records regarding these negligent procedures with due diligence, once he was in fair health and had the ability to do so." *Id.* at 11, 30.

Assuming *arguendo* that physical incapacity could equitably toll the statute of limitations—a proposition for which Madrid cites no controlling authority—Madrid has not adduced any evidence to support his conclusory allegation that he was "legally disabled," or that he "had no time and was in no health to investigate his course of treatment" prior to May 10, 2021. Nor has Madrid otherwise shown that he exercised diligence in pursuing his rights

during the nearly four years that elapsed between the date he learned that he had PVS as a result of the 2017 RFA and the date he filed his SF-95.

2

Madrid next contends that, under Tex. Civ. Prac. & Rem. Code Ann. § 74.251, the two-year statute of limitations begins to run "from the date the medical or health care treatment that is the subject of the claim . . . is *completed*," and that

> [t]he negligent ablation in 2017 caused PVS, and the delay in care of PVS, on multiple occasions, caused [pulmonary hypertension] and [pulmonary fibrosis]. Failure to inform, by concealing the diagnosis, and treat [pulmonary hypertension] and [pulmonary fibrosis], led to a lobectomy of plaintiff's upper lobe of his left lung. This was continuous course of treatment and pattern of substandard care with fraudulent concealment.

P. Br. (ECF 68-1) at 9. In making this argument, it appears that Madrid is relying on the continuous or continuing treatment doctrine, which recognizes that "where the plaintiff is in the continuing care of the negligent actor for the same injury out of which the FTCA cause of action arose, the statute of limitations may be tolled under certain circumstances until the end of the course of treatment." *Ulrich v. Veterans Admin. Hosp.*, 853 F.2d 1078, 1080 (2d Cir. 1988); *see also Wehrman v. United States*, 830 F.2d 1480, 1483 (8th Cir. 1987) ("Under the continuing treatment doctrine, a plaintiff's cause of action does not accrue until the tortious continuing treatment ends, even if the plaintiff is aware of the facts constituting negligence before that time."); *Otto v. Nat'l Inst. of Health*, 815 F.2d 985, 988 (4th Cir. 1987) ("[W]here there has been a course of continuous medical treatment, a claim may not accrue until the end of that course of treatment, if the treatment has been for the same illness or

- 13 -

injury out of which the claim for medical malpractice arose." (citation omitted)).  Assuming *arguendo* that the Fifth Circuit would recognize the continuous treatment doctrine as a basis for equitably tolling the FTCA's statute of limitations,[11] Madrid has not created a genuine issue of material fact on its application because he has not introduced sufficient evidence for the court as trier of fact to find that his treatment was continuous.[12]  Instead, his claims are predicated on a series of alleged distinct negligent acts committed by various physicians working at the VAMC.  Madrid has not met his summary judgment burden on the question of equitable tolling under either a fraudulent concealment or continuing treatment theory.  Accordingly, the court holds that his claims based on the 2017 RFA (counts 1 and 2),

---

[11]Although several circuits have adopted the continuous treatment doctrine, it does not appear that the Fifth Circuit has yet addressed whether this doctrine applies to equitably toll the statute of limitations for FTCA claims.

[12]*See, e.g.*, *Miller v. United States*, 932 F.2d 301, 305 (4th Cir. 1991) ("[T]he rationale for [the continuous treatment] tolling theory only permits its application when the treatment at issue is for the same problem and by the same doctor, or that doctor's associates or other doctors operating under his direction." (citing cases)); *Page v. United States*, 729 F.2d 818, 823 n.36 (D.C. Cir. 1984) ("'[T]reatment from succeeding government physicians' does not interrupt the running of the limitation when the personal relationship with the physician charged with malpractice has ended and that physician 'is not claimed to have acted in direct concert with the succeeding physicians.'" (quoting *Brown v. United States*, 353 F.2d 578, 580 (9th Cir. 1965))); *Barroca v. United States*, 2021 WL 274505, at *21 (D. Kan. Jan. 27, 2021) ("If a claimant asserting an FTCA claim is treated over time by different government doctors at different facilities, the claimant cannot invoke the continuous treatment doctrine for claims against doctors who only treated plaintiff for the problem outside the statute of limitations."); *Dundon v. United States*, 559 F. Supp. 469, 473 (E.D.N.Y. 1983) ("The contention that it is sufficient that the decedent continued to receive treatment at facilities owned and operated by the government and was continuously treated by government physicians has been consistently rejected by the courts where a patient receives improper care from one government physician and is thereafter treated by others not accused of that malpractice.").

including his claim based on the alleged failure to obtain informed consent related to this procedure,[13] are time-barred and defendant is entitled to summary judgment dismissing them.

### D

Even if Madrid's claims based on the 2017 RFA were not time-barred, the court would grant the government's motion for summary judgment on the alternative ground that Madrid has failed to produce sufficient evidence for the court as trier of fact to find that the 2017 RFA was negligently performed.  To prove medical negligence under Texas law, Madrid must establish (1) a duty by the physician or hospital to act according to an applicable standard of care, (2) breach of that standard of care, (3) injury, and (4) a causal connection between the breach of care and the injury.  *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003).  As the court explains below, *see infra* § V(A), "[u]nless th[e] standard of care is common knowledge or within the experience of laymen, testimony from a medical expert is required to satisfy the plaintiff's threshold burden of proof."  *Coleman v. United States*, 912 F.3d 824, 829 (5th Cir. 2019) (citing *Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008)).  In support of his 2017 RFA-based claims, Madrid relies solely on the expert testimony of Dr. Zwicke.  But the court, as the trier of fact who will evaluate Dr.

---

[13]Because the court concludes that Madrid's claim for failure to obtain informed consent regarding the 2017 RFA is timed-barred, it does not address the government's argument that it is entitled to summary judgment on this claim on the grounds that Dr. Wiegn and Dr. Moore *did* obtain Madrid's informed consent prior to the procedure or that Madrid has failed to prove that a reasonable person with A-Fib in the same or similar circumstances, i.e., having previously undergone an unsuccessful ablation procedure without complication, would have refused the procedure had he been warned of the rare but significant risk of symptomatic PVS.

Zwicke's opinions, is unpersuaded that her opinions on the applicable standard of care or breach of that standard are sufficient to establish either element by a preponderance of the evidence. *See In re Placid Oil Co.*, 932 F.2d 394, 398 (5th Cir. 1991) ("Where 'the evidentiary facts are not disputed, a court in a nonjury case may grant summary judgment if trial would not enhance its ability to draw inferences and conclusions.'" (quoting *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978))); *Nunn v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 2540754, at *2 (N.D. Tex. June 22, 2010) (Fitzwater, C.J.) (under Fed. R. Evid. 702, "[t]he court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999))). This is because, even assuming that Dr. Zwicke is qualified under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Rule 702 to provide an expert opinion on RFA procedures generally, she has never performed an RFA, she has not observed an RFA since 1998, and her research methodology with respect to the proper wattage and duration for an RFA is unsound. In other words, Madrid has failed to provide a basis for the court to find that Dr. Zwicke's opinion on the standard of care—i.e., what is usually and customarily done by other practitioners under similar circumstances, *see, e.g.*, *Keo v. Vu*, 76 S.W.3d 725, 732 (Tex. App. 2002, pet denied) (holding that expert medical witness must have "practical knowledge of what is usually and customarily done by other practitioners under circumstances similar to those confronting the malpractice

- 16 -

defendant." (citing cases))—is entitled to any weight.[14]

E

To the extent that the government seeks summary judgment based on limitations with respect to portions of counts 3 and 4, the government has not established beyond peradventure that these claims are time-barred. *See Trinity Marine Prods., Inc.*, 812 F.3d at 486 ("[T]he FTCA's statute of limitations is an affirmative defense for which the Government has the burden of proof." (citation omitted)).

The government maintains in its cross-motion that "the FTCA's two-year statute of limitations bars all of Plaintiff's claims—except for those post-surgery claims related to alleged delays and substandard treatment of Plaintiff's [PVS] that occurred between May 10, 2019 (2 years from when the VA received Plaintiff's SF-95) and January 3, 2020." D. Br. (ECF No. 56) at 12. But it offers no argument, and cites no evidence, that would establish beyond peradventure that, prior to May 10, 2019, Madrid had "knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection between the treatment and injury or (b) to seek professional advice, and then with that advice, to conclude that there was a causal connection between the treatment and injury." *MacMillan*, 46 F.3d at 381 (citation omitted). The government's conclusory statement that "the FTCA's two-year limitations period bars . . . portions of Counts 3 [and] 4," D. Br. (ECF No. 56) at 14, is insufficient of itself to satisfy the summary judgment burden. Accordingly, although the

_____

[14]The outcome in this case would be the same under amended Fed. R. Evid. 702, which took effect December 1, 2023.

court does not suggest how it will rule at trial as trier of fact on the question whether counts 3 and 4 are time-barred, the court holds that the government has failed to establish that it is entitled to summary judgment based on limitations with respect to these counts.

IV

Before turning to the parties' remaining summary judgment arguments, the court addresses the government's amended[15] motion to strike plaintiff's expert designations and reports, to exclude the testimony of Dr. Jain, and to limit the testimony of Dr. Zwicke.

A

The government moves to strike Madrid's expert designation and to exclude any expert testimony of Dr. Jain on the ground that his expert report violates Rule 26(a)(2)(B).

1

Under Rule 26(a)(2)(B), the disclosures of an expert witness who is retained or specially employed to provide expert testimony in the case must be accompanied by a written report that contains, *inter alia*:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all

---

[15]The government filed its motion on July 3, 2023. Madrid responded on July 12, 2023, and the government filed its reply on July 26, 2023. On July 28, 2023 the government filed an amended motion. On August 7, 2023 the parties filed an agreed motion for leave to file Dr. Zwicke's supplemental opinion, which the court granted. The court then permitted the government to file a surreply to its amended motion to strike and permitted Madrid to file a final reply.

- 18 -

> publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years,
> the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and
> testimony in the case.

The Advisory Committee's Note to Rule 26 states that expert witnesses "must prepare a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor." Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note to 1993 amendments. "These Notes also explain that the purpose of the reports is to avoid the disclosure of 'sketchy and vague' expert information, as was the practice under the former rule." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996) (citing Rule 26 advisory committee's note (1993 amendments)). "The purpose of a 'detailed and complete' expert report as contemplated by Rule 26(a) . . . [is to] prevent an ambush at trial." *In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, 2007 WL 5023541, at *1 (S.D. Tex. Feb. 1, 2007) (quoting *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de P.R.*, 248 F.3d 29, 35 (1st Cir. 2001)). "The test of a report is whether it was sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced." *Kim v. Nationwide Mut. Ins. Co.*, 614 F.Supp.3d 475, 484 (N.D. Tex. 2022) (Fitzwater, J.) (quoting *Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996)).

- 19 -

2

Dr. Jain's report does not comply with the requirements of Rule 26 due to multiple deficiencies. Dr. Jain opines that "[t]he above-mentioned care amounts to delay in care and substandard care," but he does not adequately explain the facts or medical records that he relied on in forming this opinion. Jain Rpt. (ECF No. 34-1) at 2 (bold font omitted). This violates Rule 26(a)(2)(B)(ii). Nor does Dr. Jain provide "a complete statement of all opinions the witness will express and the basis and reasons for them." Rule 26(a)(2)(B)(i). His three-page report, which comprises what can best be characterized as a series of notes, preliminary observations, and rhetorical questions, is plainly insufficient to meet the requirements of Rule 26.

In his response to the government's motion, Madrid explains that

> Dr. Jain was retained through American Medical Experts, LLC, (hereinafter, "AMA"), Plaintiff retained Dr. Jain when, at a time they assisted clients who were pro se and without representation. Shortly after, they discontinued helping unrepresented clients. Plaintiff does not have direct access to Dr. Jain and has contacted AMA for information. Any information missing was a harmless error, there is substantial justification, and Plaintiff is in process of attempting to acquire the missed information. AMA staff has referred Plaintiff's request to management to gather missing information on July 10, 2017, and Plaintiff is currently awaiting a response.

P. Br. (ECF No. 55-1) at 10. It has been more than four months since Madrid requested additional information from Dr. Jain, and there is no suggestion in the summary judgment record that he has been successful in his requests. Accordingly, given Dr. Jain's failure to comply with Rule 26 and apparent current unavailability, the court in its discretion grants the

government's motion to strike and exclude Dr. Jain's report and opinions. *See, e.g.*, *Sullivan v. Glock, Inc*., 175 F.R.D. 497, 505-06 (D. Md. 1997) (Grimm, J.) (surveying cases and concluding that "[t]he net result of the analysis of these cases is that the trial court has enormous discretion in deciding whether a party's violation of the expert report rules is justified or harmless, and the result will be determined by the facts peculiar to each case").

## B

In its surreply, the government moves to strike Dr. Zwicke's July 27, 2023 supplemental report ("Supplemental Report") and any testimony based on that report. The government maintains that the largely new opinions contained in the report do not constitute "supplementation," but are instead untimely disclosures that should be stricken under Rule 37(c)(1).[16]

## 1

Assuming *arguendo* that the Supplemental Report is not a proper supplement under Rule 26(e),[17] the court concludes that the report should not be stricken under Rule 37(c)(1)

---

[16]The government also moves to strike Dr. Zwicke's opinions on the question whether the 2017 RFA was negligently performed, contending that Dr. Zwicke is unqualified to testify on this issue and that her opinions are unmoored from her specialized expertise, rendering them insufficiently reliable under *Daubert* and Rule 702. Because the court has concluded that Madrid's claims related to the 2017 RFA are barred by the FTCA's two-year statute of limitations, and, alternatively, that Dr. Zwicke's expert opinions are not entitled to any weight with respect to this issue, it denies this ground of the government's motion to strike as moot.

[17]Rule 26(e)(1)(A) requires that a party supplement a Rule 26(a) disclosure "if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]"

because Madrid's failure to make a timely disclosure in this case is harmless.

Under Rule 37(c)(1),

> [i]f a party fails to provide information or identify a witness as
> required by Rule 26(a) or (e), the party is not allowed to use that
> information or witness to supply evidence on a motion, at a
> hearing, or at a trial, unless the failure was substantially justified
> or is harmless.

Rule 37(c)(1).[18]  "Rule 37(c)(1) thus does not require witness preclusion for untimely

disclosure if missing the deadline is harmless." *Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d

187, 196 (4th Cir. 2003).  "The district court has broad discretion in deciding whether a Rule

26(a) violation is substantially justified or harmless." *Sea Side Villas II Horizontal Prop.*

*Regime v. Single Source Roofing Corp.*, 64 Fed. Appx. 367, 372 (4th Cir. 2003) (citing

*Mid-Am. Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996)).

> In evaluating whether a violation of Rule 26 is harmless, the
> court examines four factors: (1) the importance of the evidence;
> (2) the prejudice to the opposing party of including the
> evidence; (3) the possibility of curing such prejudice by granting
> a continuance; and (4) the explanation for the party's failure to
> disclose.

*Hoffman v. L&M Arts*, 2013 WL 81578, at *2 (N.D. Tex. Jan. 8, 2013) (Fitzwater, C.J.)

(quoting *Librado v. M.S. Carriers, Inc.*, 2004 WL 1490304, at *11 (N.D. Tex. June 30, 2004)

(Fitzwater, J.)).  "The court considers the four-factor test holistically.  It does not

mechanically count the number of factors that favor each side." *Id.* at *3 n.7 (citations and

---

[18]Rule 26(a)(2)(D) requires that the parties make expert disclosures "at the times and
in the sequence that the court orders."

internal quotation marks omitted) (quoting *EEOC v. Serv. Temps, Inc.*, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009) (Fitzwater, C.J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012)) (citations and internal quotation marks omitted).

2

Regarding the first factor—the importance of the evidence—the court concludes that the opinions contained in the Supplemental Report are important because Dr. Zwicke opines, *inter alia*, on whether Madrid received substandard care from his care team at VAMC, which is an element of Madrid's medical negligence cause of action.

3

The second factor focuses on prejudice to the opposing party.  The government maintains that it will be substantially prejudiced if Dr. Zwicke is permitted to testify on her new opinions because the government has already designated its own experts, deposed Dr. Zwicke, moved to strike Dr. Zwicke's opinions, and cross-moved for summary judgment. It also contends that Madrid produced the Supplemental Report well after the rebuttal expert deadline, precluding the government from determining whether it needed to retain a new rebuttal expert to address the new report, and that if it were permitted to respond to the Supplemental Report through a continuance, it would incur substantial additional expenses.

The court concludes that any prejudice to the government as a result of Madrid's late disclosure is minimal.  This court has distinguished *complete failures* to disclose from *untimely* disclosures.  As the court explained in *Hoffman*:

- 23 -

> The court is not persuaded that defendants will be prejudiced if the court fails to strike the Supplemental Report. In the sense relevant here, prejudice arises, if at all, from the *timing* of the disclosure rather than from the *content* of the disclosure. If prejudice could be demonstrated based on the *content* of the disclosure, a party could always show prejudice when required to rebut new evidence. The *timing* of the disclosure results in prejudice when, for instance, the opposing party must incur unreasonable additional costs that could have been avoided by an earlier disclosure, or the party is precluded under the scheduling order from developing and presenting rebuttal evidence. Defendants have not shown that they must incur unreasonable additional costs that could have been avoided by an earlier disclosure.

*Id.* at *2. As in *Hoffman*, the government has not shown that it must incur unreasonable additional costs that could have been avoided by earlier disclosure. Although the government stated during oral argument that, if the court allows the Supplemental Report, the government will seek to re-depose Dr. Zwicke, move to extend the expert deadlines, and re-file its summary judgment brief, it is not clear that this will still be the case given that the court is today dismissing Madrid's claims that are based on the 2017 RFA. And as Madrid points out in his response, most of the opinions in the Supplemental Report relate to facts alleged in the SAC or evidence that the government has had in its possession "for quite some time." P. Resp. (ECF No. 85) at 15.

4

The third factor addresses the possibility of curing prejudice with a continuance. The government posits that, although continuing the case might diminish the prejudice to the government, a continuance would result in increased cost as well as delay. The court has

already vacated the November 6, 2023 trial setting, and the government has offered no explanation for why continuing the case again would result in increased cost.  The court concludes that the third factor is neutral.

5

Under the fourth factor, the court evaluates the explanation for the late disclosure. Madrid argues that, on October 28, 2021, he came into possession of the EP Lab Procedural Report and VA Cath Lab reports from February 28, 2017, August 10, 2017, December 22, 2017, and April 25, 2019 (collectively, the "Lab Reports"), but sent his only copies to the VA disability intake center; that during Dr. Zwicke's deposition, she was shown the EP Lab Procedural Report from the 2017 RFA and Madrid noticed that the durations of several ablation applications were well over the 240-300 seconds each that were documented in the medical records made available to him; and that he was unable to open some of the discovery provided by the government and did not obtain copies of the Lab Reports until after July 25, 2023.  The court is not persuaded that Madrid could not have obtained copies of the Lab Reports—which he concedes he knew about as early as October 28, 2021—prior to the disclosure deadline.

6

Finally, the court considers the factors holistically.  Stated summarily, although the court is not persuaded that, had he acted diligently, Madrid would still have been unable to obtain the Lab Reports or any other evidence that is the basis for Dr. Zwicke's Supplemental Report in time to meet the discovery deadline, the evidence he seeks to rely on is important,

the government has not shown that it must incur unreasonable additional costs that could have been avoided by an earlier disclosure, and the absence of an impending trial date suggests that a another trial continuance, if necessary, is possible.   Under these circumstances, the court finds that Madrid's failure to disclose the Supplemental Report sooner is harmless.  Accordingly, the court denies the government's request that it strike the Supplemental Report.

V

The court now turns to the government's contention that it is entitled to summary judgment on Madrid's pulmonary-treatment claim—i.e., his claim based on treatment received between May 2019 and January 2020—because his retained medical experts have not articulated the applicable standard of care, breach, or that any breach caused Madrid injury.

A

Liability for medical negligence "claims brought under the FTCA is determined by state law."  *Coleman*, 912 F.3d at 829 (citing *Ayers v. United States*, 750 F.2d 449, 452 n.1 (5th Cir. 1985)).  Texas law applies in this case because the alleged medical negligence occurred in Texas.

> When the negligence alleged is in the nature of medical malpractice, the plaintiff has the burden of proving (1) a duty by the physician or hospital to act according to an applicable standard of care; (2) a breach of that standard of care; (3) an injury; and (4) a causal connection between the breach of care and the injury.

- 26 -

*Quijano*, 325 F.3d at 567 (citing *Mills v. Angel*, 995 S.W.2d 262, 267 (Tex. App. 1999, no pet.)).  "The plaintiff must establish the standard of care as a threshold issue before the factfinder may consider whether the defendant breached that standard of care to the extent it constituted negligence."  *Hannah*, 523 F.3d at 601.  "Unless th[e] standard of care is common knowledge or within the experience of laymen, testimony from a medical expert is required to satisfy the plaintiff's threshold burden of proof."  *Coleman*, 912 F.3d at 829 (citing *Hannah*, 523 F.3d at 601).  "That testimony must focus on the standard of care in the community in which the treatment took place or in similar communities."  *Quijano*, 325 F.3d at 568 (citations omitted).  "In other words, subject to [a] narrow exception . . ., a plaintiff must produce expert testimony to prove the applicable standard of care, a breach of that standard, and a causal connection between the breach and the harm suffered in medical malpractice cases."  *Woods v. U.S. Gov't*, 2010 WL 809601, at *3 (N.D. Tex. Feb. 4, 2010) (Ramirez, J.) (citing *Hannah*, 523 F.3d at 601-02; *Guile v. United States*, 422 F.3d 221, 225 (5th Cir. 2005)), *rec. adopted*, 2010 WL 809601, at *1 (N.D. Tex. Mar. 8, 2010) (Fitzwater, C.J.), *aff'd*, 2011 WL 857007 (5th Cir. Mar. 11, 2011).

B

Madrid maintains that his "pulmonary-treatment claim—for treatment received between August 2017 and April 2021—has competent expert testimony," P. Br. (ECF No. 68-1) at 33 (bold font omitted).  Madrid contends that

- 27 -

> [i]n Dr. Zwicke's medical opinion, dated 03/18/23, and supplemental opinion dated 07/27/23, she used all of plaintiff's medical records, medical literature, and her extensive knowledge from decades of care as a cardiologist, cardiac interventionalist, and PH specialist to show (1) the physician's duty to act according to an applicable standard of care; (2) a breach of that standard of care; (3) injury; and (4) causation in plaintiff's course of treatment by Dallas VAMC.

*Id.* at 34 (citing P. App. (ECF No. 68-3) at 5-34).[19]  Without suggesting a view about whether Madrid will prevail on his remaining medical negligence claims at trial, the court holds that he has created a genuine issue of material fact with respect to the duty, breach, and causation elements of these claims.

For example,[20] Madrid has presented evidence that VAMC "treating physicians failed to inform or consult Mr. Madrid of his known diagnosis of pulmonary hypertension, provide follow-up treatment and care, or refer Mr. Madrid to a PH specialist," P. Br. (ECF No. 68-1) at 17 (quoting P. App. (ECF No. 68-3) at 30); that "[a]n immediate [right heart catheterization ('RHC')] with exercise test, CPET, PFT, 6-min walk test, and V/Q scan should have been performed, to include referring Mr. Madrid to a PH specialist," *id.* (quoting

---

[19]This method of citing the record is improper.  *See, e.g.*, *Akop v. Goody Goody Liquor, Inc.*, 2006 WL 119146, at *3 n.4. (N.D. Tex. Jan. 17, 2006) (Fitzwater, J.) (holding that plaintiffs' citation to entire 137-page appendix was inadequate under N.D. Tex. Civ. R. 56.5(c) because it dramatically increased burden on court to locate evidence on which summary judgment nonmovant relied).

[20]"When this court denies rather than grants summary judgment [with respect to a particular issue], it typically does not set out in detail the evidence that creates a genuine issue of material fact." *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).

- 28 -

P. App. (ECF No. 68-3) at 30); and that the "[f]ailure to diagnose and treat these findings allowed Mr. Madrid's fibrosis to progress until he had life-threatening hemoptysis and had to have an immediate lobectomy that removed the LUL of his left lung," P. App. (ECF No. 68-3) at 26. The court as trier of fact could reasonably find based on this evidence that, as a result of the VAMC physicians' departure from the standard of care in diagnosing, treating, and informing Madrid about his various lung conditions, these conditions progressed and worsened, resulting in Madrid's having to undergo a lobectomy. The court therefore denies the government's motion for summary judgment to the extent it is addressed to counts 3-6.

C

Madrid moves for partial summary judgment establishing his right to recover on counts 5 and 6. Although Madrid has created genuine issues of material fact that are sufficient to preclude the government from obtaining summary judgment dismissing counts 5 and 6 and to warrant a trial of those claims, he has not established "beyond peradventure" that he is entitled to recover on either claim. Accordingly, the court denies Madrid's motion for partial summary judgment on counts 5 and 6.

The court also denies the government's motion to the extent it seeks summary judgment on the grounds that (1) there is no genuine dispute that Madrid's PVS "was promptly diagnosed and appropriately treated—any delay is attributed to [Madrid] leaving the hospital against medical advice," D. Br. (ECF No. 56) at 23 (bold font omitted), and that (2) Madrid cannot establish any damages caused by medical negligence, *id.* at 23-24. Although treatment of Madrid's PVS may have been delayed in part by Madrid's leaving the

hospital against medical advice, the question whether Madrid's treating physicians acted negligently in further delaying the treatment of Madrid's PVS and other medical conditions is a question of fact to be decided by the court as trier of fact. So, too, is the question whether, and in what amount, Madrid suffered damages as a result of any alleged negligence by his care team at the VAMC.[21]

## VI

The court next considers the government's contention that it is entitled to summary judgment limiting Madrid's recoverable damages under 28 U.S.C. § 2675(b).

## A

Under the FTCA,

> [a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

---

[21]The government moves for summary judgment on Madrid's "substandard medical records" claim (count 7) on the grounds that this claim is not recognized under Texas law and, even if it was, Madrid cannot establish causation or injury in relation to this claim. Madrid responds that "[t]he substandard medical records are just another form of negligence that follows the pattern of substandard care, negligence, delay in care, failure to diagnose, inform, and treat, to include fraudulent concealment of data, facts, and records." P. Br. (ECF No. 68-1) at 35. And he confirmed at oral argument that he does not intend count 7 to be a standalone claim. Accordingly, the court grants the government's motion for summary judgment with respect to count 7. Madrid may rely at trial, however, on evidence of the alleged substandard documentation of medical records to support his remaining medical negligence claims.

28 U.S.C. § 2675(a); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.").  "The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim."  28 U.S.C. § 2675(a).  In other words, a claimant exhausts his administrative remedies under the FTCA by presenting his claim to the appropriate federal agency and obtaining a written notice of denial of the claim or awaiting the passage of six months without a final disposition.  *See id.*; *see also, e.g.*, *Alvarez v. United States*, 2022 WL 18456353, at *2 (S.D. Tex. Nov. 1, 2022) ("Claimants must have 'first presented the claim to the appropriate Federal agency' and have either had their claims 'finally denied by the agency in writing' or have received no 'final disposition' of their claims within six months of presentment." (quoting 28 U.S.C. § 2675(a)).

A claimant is permitted under 28 C.F.R. § 14.2(c) to amend his claim "at any time prior to final agency action or prior to the exercise of the claimant's option under 28 U.S.C. § 2675(a)" to treat the agency's silence as a final denial and file suit in federal court.  28 C.F.R. § 14.2(c).[22]  Once a claimant files suit, however, his potential recovery is limited to the amount presented to the agency in the notice of claim, "except where the increased

---

[22]If the claimant timely files an amendment to a pending claim, the agency is permitted an additional six months in which to make a final disposition of the claim, as amended, "and the claimant's option under 28 U.S.C. 2675(a) [to file suit based on the deemed final denial of the claim] *shall not accrue until six months after the filing of an amendment*."  28 C.F.R. 14.2(c) (emphasis added)

amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim."  28 U.S.C. § 2675(b).

B

The government does not dispute that Madrid properly exhausted his claim for $778,000 in damages, which he presented to the VA in his May 7, 2021 Form SF-95 ("First SF-95).  *See* D. Reply (ECF No. 73) at 15 n.7 ("The United States does not contest that the Court has jurisdiction over those claims Plaintiff included in his May 2021 SF-95.").  But it contends that Madrid's attempts to increase his demand by filing a second Form SF-95 ("Second SF-95") in February 2022[23] and by attaching a third Form SF-95 ("Third SF-95") to his May 3, 2022 complaint were ineffective because neither the Second SF-95 nor the Third SF-95 was properly exhausted before Madrid filed this lawsuit and, accordingly, Madrid cannot recover any sum in excess of the amount of the claim that he properly presented unless he establishes that the "newly discovered evidence" exception in § 2675(b) is applicable.

Madrid responds that

> demanded damages were increased through properly filing amendments to his original claim due to newly discovered medical records, treatments on his current health, and new diagnosis that was secondary to his course of treatment.

---

[23]The "Updated SF-95" seeking $5,000,000 in damages that Madrid attached to his amended complaint is dated March 8, 2022, but the government maintains that the VA received it on February 23, 2022.

> Damages should not be capped to the original claim of $778,000
> due to the above taking place after the SF-95 was submitted on
> 5/10/21, and remedies being exhausted.

P. Reply (ECF No. 68-1) at 48; *see also id.* at 7 ("Demanded damages were amended several

times due to newly discovered medical records, new counts, and diagnosis due to negligence

by VAMC." (citing P. App. (ECF No. 68-3) at 39)).[24]

C

As a threshold matter, the court holds that Madrid cannot recover the sum of

$15,000,000 that he seeks in the Third SF-95 unless he can demonstrate newly discovered

evidence or intervening facts under 28 U.S.C. § 2675(b) because he did not "present" the

Third SF-95 to the VA until after he filed this lawsuit.  In his response brief, Madrid

acknowledges that he filed the Third SF-95 as an exhibit to his complaint "as a means to

show plaintiff's newly demanded damages."  P. Br. (ECF No. 68-1) at 7.  But it is clearly

established by regulation that, once Madrid filed suit, he was no longer permitted to amend

his claim at the administrative level.  *See* 28 C.F.R. § 14.2(c) ("A claim presented in

compliance with paragraph (a) of this section may be amended by the claimant at any time

. . . *prior to the exercise of the claimant's option under 28 U.S.C. 2675(a)*." (emphasis

added)); *see also, e.g., Gomez v. United States*, 2019 WL 11505831, at *2 n.1 (W.D. Tex.

---

[24]Madrid also cites Rule 15(a)(2) in his brief, which governs the amendment of
pleadings in federal court.  But Madrid cannot rely on the Federal Rules of Civil Procedure
to accomplish what he could not do under the FTCA, i.e., recover damages in excess of his
properly-exhausted administrative claim.  *See* 28 U.S.C. § 2072(b) (The federal rules of
procedure "shall not abridge, enlarge or modify any substantive right.").

Sept. 20, 2019) ("Pending administrative claims may be freely amended prior to final agency action, without the need to demonstrate newly discovered evidence. However, because Plaintiff did not amend her administrative claim, she must now satisfy the standard of 28 U.S.C. § 2675(b)." (citations omitted)). Because the Third SF-95 did not operate as an amendment to Madrid's administrative claim, he cannot recover the sum it claimed, i.e., $15,000,000, unless he demonstrates newly discovered evidence or intervening facts under 28 U.S.C. § 2675(b).

Nor can Madrid recover the $5,000,000 he seeks in the Second SF-95 without establishing newly discovered evidence or intervening facts under 28 U.S.C. § 2675(b). This is because the FTCA clearly requires presentation of the claim *and* a final denial (either in writing or by the passage of six months' time) in order to satisfy the exhaustion requirement of 28 U.S.C. § 2675(a), and there was never a final denial of Madrid's *amended* claim[25] for $5,000,000. *See, e.g.*, *Broussard v. United States*, 52 F.4th 227, 230 (5th Cir. 2022) ("[L]imitations on the FTCA's waiver of sovereign immunity must be strictly construed in

_____

[25]Madrid does not dispute that his Second SF-95 constitutes an *amendment*—as opposed to a *supplement*—of the First SF-95. Under 28 C.F.R. § 14.2(c), the VA was entitled to a period of six months in which to make a final disposition of the amended claim for $5,000,000 in personal injury damages, and Madrid's option to file suit without awaiting a final disposition would not have accrued until six months after he filed the Second SF-95. 28 C.F.R. § 14.2(c). In other words, the filing of the Second SF-95 effectively re-started the six-month clock for purposes of filing a lawsuit based on the deemed denial of Madrid's administrative claim. *See, e.g.*, *Martinez v. United States*, 2021 WL 4224955, at *11 (S.D.N.Y. Sept. 16, 2021) ("The filing of an amendment restarts the agency's time to respond to the claim."); *Chubbuck v. United States*, 2015 WL 6501226, at *4 (M.D. Penn. Oct. 27, 2015) (Plaintiff's "amendment to his administrative tort claim . . . restarted the six-month period for the agency to decide his administrative tort claim." (citing 28 C.F.R. § 14.2(c)).

- 34 -

favor of the United States.").  Because Madrid filed suit before properly exhausting his administrative remedies with respect to the Second SF-95, he cannot recover any sum in excess of $778,000—the amount of the only claim that he properly presented to the VA—unless he can demonstrate newly discovered evidence or intervening facts under 28 U.S.C. § 2675(b).[26]

## D

"The plaintiff in an FTCA suit who seeks to exceed his administrative claim has the burden to show that the addition is based on newly discovered evidence or intervening facts within the meaning of § 2675(b)."  *Lebron v. United States*, 279 F.3d 321, 330 (5th Cir. 2002) (citing cases).  To satisfy this burden, a plaintiff must satisfy a two-part inquiry: (1) "a subjective test as to whether the specific injuries were known at the time the

---

[26]The government could have moved [under Fed. R. Civ. P. 12(b)(6)] to dismiss this entire lawsuit based on Madrid's failure to comply with 28 C.F.R. § 14.2(c).  *See, e.g. Rawers v. United States*, 488 F.Supp.3d 1059, 1126 (D.N.M. 2020) (concluding that 28 C.F.R. § 14.2(c) is a claim-processing rule rather than a jurisdictional rule, but noting that "[f]ailure to comply with this claim-processing rule is a legitimate ground for dismissal."). But because the government did not do so, and because the Fifth Circuit has held that the failure to comply with administrative requirements such as those set out in 28 C.F.R. § 14.2(c) does *not* deprive the court of subject matter jurisdiction under the FTCA—*see, e.g.*, *Adams v. United States*, 615 F.2d 284, 292 (5th Cir. 1980) ("A federal court's power to adjudicate a tort claim brought against the United States depends solely on whether the claimant has previously complied with the minimal requirements of the statute." (citing 28 U.S.C. § 2675)); *Seals v. United States*, 319 F.Supp.2d 741, 745 (W.D. Tex. 2004) (denying motion to dismiss based on lack of jurisdiction where plaintiff complied with statutory prerequisites to suit but "claims were filed prematurely according to the *regulations*," and holding that 28 U.S.C. § 2675(a) "alone determines the jurisdictional prerequisites to suit under the FTCA")—the government has waived any contention that Madrid's FTCA claims are barred *in their entirety* based on Madrid's failure to properly exhaust his amended claim.

administrative complaint was made," and (2) "an objective test as to whether the plaintiff could have made out [his] worst-case scenario based on the basic severity of the injuries that were known." *Dickerson ex rel. Dickerson v. United States*, 280 F.3d 470, 476 (5th Cir. 2002) (citing *Reilly v. United States*, 863 F.2d 149, 172-73 (1st Cir. 1988)); *Lebron*, 279 F.3d at 330-31; *Low v. United States*, 795 F.2d 466, 470 (5th Cir. 1986). The plaintiff must also show that the newly discovered evidence or intervening facts were not "reasonably capable of detection at the time the administrative claim was filed" or "discoverable through the exercise of reasonable diligence." *Lebron*, 279 F.3d at 330 (quoting *Low*, 795 F.2d at 470).

The court holds, largely for the reasons explained in the government's reply brief, that Madrid has not met his burden with respect to alleged "newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency." 28 U.S.C § 2675(b). He does not identify with particularity the newly discovered evidence that is relevant to the amount of damages he claims; he does not explain how this newly discovered evidence supports a recovery in excess of his administrative claim; he does not show that the newly discovered evidence was not reasonably capable of detection at the time his administrative claim was filed or was not discoverable through the exercise of reasonable diligence, *see supra* § III(C)(1); and he does not explain how any newly discovered evidence "materially differs from the worst-case prognosis of which the claimant knew or could reasonably have known when the claim was filed." D. Reply (ECF No. 73) at 17 (quoting *Lebron*, 279 F.3d at 330).

Nor has Madrid satisfied the statute's other option: that he allege and prove

intervening facts relating to the amount of the claim.  Although he refers generally to "treatments on his current health" and a "new diagnosis that was secondary to his course of treatment," P. Br. (ECF No. 68-1) at 48, he does not cite any evidence of these alleged "treatments" or "new diagnosis," or explain how they relate to the amount of his claim.  He relies only on the Third SF-95 itself, in which he states:

> Updated SF-95 for new and relevant information stating substandard of care from 2015-2021 at Dallas VAMC, Medical Opinion information shows procedure on Feb. 28, 2017 at Dallas VAMC was performed without known mapping technique, prior imaging and numerous other factors that would lead to a safe and successful ablation.  This update is to coincide with substandard of care for prompt treatment, failure to diagnose, treat or inform veteran.  As a result, veteran is now terminal.

P. App. (ECF No 68-3) at 39.  But these conclusory statements, unsupported by evidence, would not permit the court as trier of fact to find that Madrid received a *new diagnosis*,  that there was a change in Madrid's existing prognosis, or that there were any other intervening facts relating to the amount of Madrid's claim that arose after Madrid filed his First SF-95. *See, e.g.*, *Gomez*, 2019 WL 11505831, at *4 (denying leave to amend to increase demanded damages where plaintiff failed to "present newly discovered evidence or intervening facts such as a new diagnosis . . . or a change in prognosis that differs from what existed at the time the administrative claim was last filed" (citations omitted)).

Accordingly, the court grants this ground of the government's motion for summary judgment and holds that Madrid cannot recover more than the sum of $778,000 claimed in the First SF-95.

- 37 -

VII

The government contends that, under Tex. Civ. Prac. & Rem. Code Ann. § 74.301, Madrid's non-economic damages, such as for pain and suffering, cannot exceed the sum of $250,000. Madrid responds that each of the 18 alleged negligent acts that he describes in his brief "should be individually awarded at $250,000 and not combined into one capped award." P. Br. (ECF No. 68-1) at 44.

Under Tex. Civ. Prac. & Rem. Code Ann. § 74.301(b),

> [i]n an action on a health care liability claim where final judgment is rendered against a single health care institution, the limit of civil liability for noneconomic damages inclusive of all persons and entities for which vicarious liability theories may apply, shall be limited to an amount not to exceed $250,000 for each claimant.

Madrid does not dispute that the government is a single "health care institution." Nor has he provided any authority for the proposition that he can recover against the government for each of the 18 alleged negligent acts that he lists in his brief. The plain language of § 74.301(b) limits a health care provider's civil liability for noneconomic damages to $250,000 per claimant. Accordingly, Madrid cannot recover more than $250,000 from the government for noneconomic damages, such as pain, suffering, or mental anguish in the past and future related his treatment at VAMC. *Id.*; *see also Hartbarger v. United States*, 2017 WL 5197180, at *4 (W.D. Tex. Sept. 25, 2017) (applying § 74.301 to FTCA medical malpractice suit).

VIII

In sum, the court grants summary judgment in favor of the government on statute of limitations grounds with respect to Madrid's claims based on the 2017 RFA (i.e., counts 1 and 2), and grants summary judgment dismissing his claim for substandard documentation of medical records (count 7). Madrid may proceed to trial on his remaining claims asserted in counts 3 through 6. The court caps Madrid's total available damages at the sum of $778,000, of which no more than $250,000 may be awarded for noneconomic damages.

\* \* \*

Accordingly, for the reasons explained, the court denies Madrid's motion for partial summary judgment; grants in part and denies in part the government's cross-motion for summary judgment; grants in part and denies in part the government's motion to strike; grants the government's motion to exclude as to Dr. Jain; grants in part and denies in part the government's motion to limit the testimony of Dr. Zwicke; and caps Madrid's recoverable damages at $778,000, of which no more than $250,000 may be awarded for noneconomic damages.

**SO ORDERED**.

December 5, 2023.

SIDNEY A. FITZWATER
SENIOR JUDGE